EASTERN DIST.
*December,* 1834.

DAVIS
*vs.*
LEEDS.

<hr>

## DAVIS *vs.* LEEDS.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In cases submitted to referees, without granting them the power to act as amicable compounders, the court may revise and rectify any errors contained in the award rendered by them.

Where a cause is submitted to referees, with power to act as amicable compounders, their award rendered in pursuance of the submission, and made in relation to the matters actually referred to them, is without amendment, revision or appeal.

The award of amicable compounders, which has no relation to the matters in dispute submitted to them, is absolutely null and void; and when their acts show dishonesty, gross misconduct, want of due regard to well settled principles, or extreme partiality in rendering their award, these will be good grounds for *setting it aside.*

Amicable compounders are not required to determine, according to strictness of law, but are authorised to abate something of this strictness, in favor of natural equity.

The approval and formalities required, in the homologation of an award, are only intended to make it executory, and not for the purpose of an examination on its merits.

EASTERN DIST.
*December,* 1834.

DAVIS
*vs.*
LEEDS.

The law, providing for submitting causes to amicable compounders, whose award, if not impeached, is not subject to revision by the courts, is not unconstitutional.

This is an action for the rescission of a contract with the defendant, to furnish the plaintiff a steam engine and sugar and corn mill, for six thousand dollars, and for the restitution of the price, with damages.

The plaintiff alleges, he is a sugar planter, and contracted with the defendant, who owned an iron foundery, to furnish and erect for him, a steam engine, sugar and corn mill, on his plantation, for doing which, he conveyed a house and lot to the defendant, at the price of six thousand dollars; and that the defendant bound himself to put up said engine, mills, and all the necessary machinery, in the best workmanlike manner, by the first of August, 1832, in time to take off his sugar crop. He further alleges, the defendant failed to comply with his contract, and did not put up the steam-engine and sugar mill, until the 29th November, when the grinding season was nearly over, and then in such an imperfect manner, and of such bad materials, as rendered them almost unfit for use, and failed entirely to put up the corn-mill, in consequence of which he has sustained damages to the amount of eight thousand dollars. He prays for a rescission of the contract, and sale of the house and lot to the defendant, and for the restitution of the price, (six thousand dollars,) with eight thousand dollars in damages.

The defendant admitted the contract, and pleaded a general denial to all the other allegations; and also averred, that any delay in putting up the engine and mill, was occasioned by the plaintiff, and that it was with his consent the corn-mill was not furnished.

After the cause was at issue, on motion of the counsel for each party, and each naming a suitable person, with a third as umpire, it was ordered by the court, that said persons be appointed referees, arbitrators and *amicable compounders,* and as such, to settle and decide upon the matters in dispute between the parties.

The amicable compounders, or a majority of them, after hearing all the evidence adduced, and the explanations of the parties respectively, made up their award, in which they decided, that the contract be cancelled, and that the plaintiff recover six thousand dollars, the price of the engine and mills, with interest from judicial demand, and five thousand dollars damages and costs; and that the engine and mill remain subject to the order of the defendant.

The defendant's counsel filed an opposition to the homologation of the award, mainly on the grounds of error and want of precision in stating the accounts, allowing damages when none were proved, of excessive damages, the award being contrary to law and evidence, and that the arbitrators exceeded their powers. He prays leave to appeal from the award, and that it be set aside as being informal, illegal, unjust and oppressive.

The district judge was of opinion, that in a case of a submission to amicable compounders, the award is not open to examination on the merits. *Code of Practice, art.* 460. But an award is open to examination by way of cassation, as where a *specific* charge of misconduct, exceeding of powers, &c., is brought against the amicable compounders.

The award was homologated, and made the judgment of the court. The defendant appealed.

*Preston,* for the plaintiff.

1. In pursuance of the article 444, of the Code of Practice, both parties agreed that their dispute might be submitted to the decision of judicial arbitrators, to act as amicable compounders.

2. The amicable compounders were duly qualified, and a majority made an award. The District Court could not do otherwise than homologate it, and make the award the judgment of the court, for the law requires that it must be homologated as it stands, to have the effect of a definitive judgment. *Code of Practice, art.* 460.

3. The parties clearly constituted the arbitrators amicable compounders; and nearly all the grounds of opposition to the

award, would require the court to open and revise it, on its merits, which is prohibited by the *Code of Practice*.

4. The award of ordinary arbitrators, could not be set aside on any of the grounds set up in the opposition. A bill in equity will not lie, to set aside an award of arbitrators on a question of fact, except for corruption, or irregularity of conduct in the arbitrators. 2 *Jacobs and Walker's Reports*, 249, 259. *La. Code*, 3077. 1 *Swan*, 52, 55. 6 *Vesey*, 282, 358. 4 *Brown's Chancery Cases*, 536. 1 *Vesey, jr.* 369. 2 *Ibid.* 15. *Kyd on Awards*, 332.

5. It is impossible to show, that the amicable compounders exceeded their authority or powers. Their award comes within the pleadings, and, no doubt, they made a compromise between rigid right and a hard case, as arbitrators always do. The award should be favored, as this mode of terminating differences, is favored in law and equity, and by general consent of the community.

6. The articles of the Code of Practice, authorising appeals from awards, are inapplicable to this case. They can only apply to arbitrations, made by the parties out of court, from which an appeal may be taken to the District, and from thence to the Supreme Court. *La Code, art.* 3097.

7. The constitution, art. 6, sec. 6, requires the legislature " to pass such laws as may be necessary and proper, to decide differences by arbitrators, to be appointed," &c.

8. If the party was permitted to appeal, and try the case *de novo*, and introduce witnesses and new testimony, the case would not be decided by arbitrators, but by the court.

*Carlton and Lockett*, for the defendant, contended, that the awards of arbitrators were open to an examination and revision by the courts. An award had been set aside in this court, because it was not written in the French language. This decision gave rise to an act of the legislature, in relation to awards, which permits them to be excepted to, for informalities and defects, and especially when the arbitrators exceed their powers, or are not qualified, &c. 9 *Martin*, 200. 1 *Moreau's Digest*, 458–9–60.

2. The arbitrators must make their report with precision, by stating the accounts, to enable the court to judge of its correctness, and to decide summarily on the merits of the award. *Code of Practice*, 455.

3. The legislature cannot pass a law, which deprives a party of his right of appeal. That is in effect done in this case, if the court is not permitted to examine the award on its merits, and revise it on appeal. Such a law is uncon- stitutional.

4. The appellate jurisdiction of this court, applies to the facts as well as the law of a cause, consequently we have a right to be heard on the facts, and the court has the power to examine them, and revise the decision or award which is based on the facts submitted and in evidence.

5. If the amicable compounders had given more damages than the party claims in his petition, they would certainly have exceeded their powers, and the award would be set aside ; and why not the same result take place, if they give damages when none are proved, or more than are proved ?

*Mathews, J.*, delivered the opinion of the court.

In this case, the plaintiff claims restitution of the price, which he had paid to the defendant, (who is an iron founder in the city of New-Orleans,) for a steam-engine, sugar-mill and corn-mill, which were by contract to have been fur- nished by the latter, constructed in a manner suitable to carry into effect the purposes for which they were intended. The petition contains allegations of unjustifiable delays, in making the engine and sugar-mill ; of defects in their con- struction, so great as to render them wholly unfit for the uses, in which they were to be employed, and of a total neglect to make the corn-mill, &c., and concludes by praying, that the contract should be rescinded, the price refunded, and that damages should be adjudged to the plaintiff, in reparation of losses sustained by him, arising from an impossibility to take off his crops of sugar, &c.

The answer contains a full denial and allegation that the delays complained of, were owing to the fault or assent of the plaintiff.

EASTERN DIST.
*December*, 1834.

DAVIS
*vs.*
LEEDS.

On these pleadings the case was submitted, by consent of parties and under a rule of court, to certain arbitrators, chosen by the parties themselves, each of them choosing one, and pointing out by name an umpire, in the event of disagreement, &c. The powers and authority of arbitrators, known in our jurisprudence, under the denomination of amicable compounders, were by the submission, confined on the persons thus chosen as judges, by the parties litigant. They made, and returned their award into court in due time, which, after cause shown on a rule taken for that purpose against the defendant, was homologated by the court below, and made the judgment thereof, from which he appealed.

This award condemned the defendant to refund the price stipulated and paid for the engine and mills, viz : six thousand dollars, and also assessed damages against him to the amount of five thousand dollars.

The correctness of the decision of the court below, depends mainly on a proper interpretation of certain articles of the Code of Practice, found in the section which treats of experts, auditors of accounts, and judicial arbitrators.

In cases submitted to referees without granting them the power to act as amicable compounders, the court may revise and rectify any errors contained in the award rendered by them.

Where a cause is submitted to referees with power to act as amicable compounders, their award rendered in pursuance of the submission, and made in relation to the matters actually referred to them, is without amendment, revision or appeal.

The grounds of opposition, to the homologation of the award, in the present instance, are most of them, (if not all,) such as are usually opposed to awards rendered under ordinary submissions to arbitrators. In cases, submitted without the grant of power to the referees, to act as amicable compounders, the court may rectify the errors contained in awards, by them rendered. *Code of Practice, art.* 459. : " But if, from the submission entered into by the parties, it appears that they intended to give to the arbitrators power to act as amicable compounders, the court cannot revise the award. It must be homologated as it stands, in order that it may have the effect of a definitive judgment." *Code of Practice, art.* 460.

The submission in the present case, clearly contains a grant of power to the arbitrators, to act as amicable compounders, and consequently deprives the tribunals of the country, of all authority to revise the award rendered in pursuance of it. Whatever has been done, in relation to the

matters actually referred to their decision, if done honestly, must remain without the possibility of revision, and as a necessary consequence, without alteration or amendment. Acts done by such arbitrators, having no just relation to the matters in dispute submitted, would be absolutely void, and gross misconduct on their part, exhibiting a want of due respect, to common and well established rules, in regard to right and wrong, or extreme partiality in their award, would be good causes for setting it aside entirely, if proven to the court, on opposition to its homologation. But nothing of this kind is either alleged or proven, in the present instance. The whole of the grounds assumed, in the numerous points presented by the counsel of the defendant, relate to want of precision in the manner in which the cause was laid before the arbitrators, and errors in their award, arising from a mistaken view of the facts and the law of the case. If parties will submit their disputes to be decided by men, chosen by themselves as judges, under the appellation of amicable compounders, they must abide their judgments, without hopes of having them revised by the courts of justice established by the constitution and laws of the state. Such judges are not required to determine according to the strictness of the law. They are authorised to abate something of this strictness in favor of natural equity. *La. Code, art.* 3077.

The award of amicable compounders which has no relation to the matters in dispute submitted to them, is absolutely null and void; and when their acts show dishonesty, gross misconduct, want of due regard to well settled principles, or extreme partiality in rendering their award, these will be good grounds for setting it aside.

Amicable compounders are not required to determine according to strictness of law, but are authorised to abate something of this strictness in favor of natural equity.

This article of the Code, if it stood alone in our jurisprudence, would appear extremely vague and indefinite. What might be considered a strict pursuance of law in the administration of justice, and what a loose adherence to its rules, are questions that would depend ultimately for their solution, on the decisions of courts in the last resort. But it appears to us, that a clue to its interpretation, (not indeed very evident,) is given in the articles of the Code of Practice above cited, wherein it is declared, that the awards of arbitrators, acting as amicable compounders, cannot be revised by the courts. In article 3096, of the Louisiana Code, provisions, similar to those contained in the Code of Practice, are found in relation to the awards of arbitrators indiscriminately, wherein it is declared, that "an award, in order to be put in execution,

# 478     CASES IN THE SUPREME COURT

EASTERN DIST.
December, 1834.

DAVIS
vs.
LEEDS.

The approval and formalities required in the homologation of an award are only intended to make it executory, and not for the purpose of an examination on its merits.

The law providing for submitting causes to amicable compounders whose award, if not impeached, is not subject to revision by the courts, is not unconstitutional.

ought to be approved by the judge; but this formality is only intended to invest the award with a sufficient authority to ensure its execution, and not to submit to the judge the examination of its merits, except in case an appeal is brought before him." This article, so far as it relates to an appeal, as well as the one immediately following, appear to us to be totally inadequate to carry into effect their apparent purposes, without the aid of ulterior legislation. If the appeal spoken of, be intended as one directly to the Supreme Court, no means are given by which the case may be brought up; and if the intention was to give an appeal, in the first instance, to the inferior tribunals, and in that way to bring a cause, involving more than three hundred dollars, before the Supreme Court, the same want of means renders it impossible, as the formalities requisite to effect such a purpose are not pointed out.

In the course of argument, one of the counsellors for the appellant, dwelt much on the unconstitutionality of any act of legislation which would operate in such a manner as to deprive a suitor of the right of appeal, or the right to have his cause revised by the appellate court, established by the constitution, a law which should undertake absolutely to deny the right of appeal, (in any case where the matter in dispute is more than three hundred dollars,) from a final judgment, rendered by a court of inferior jurisdiction, established by law, would be clearly unconstitutional. But many of the provisons of legislative acts, relating to the manner of taking and bringing up appeals, have in their operation the effect of depriving an appellant of the means of having his case revised in the Supreme Court, on its merits; and these laws have never been deemed unconstitutional. Suppose the legislature had provided no means for obtaining and bringing appeals before the appellate court, as established by the constitution, its provisions on this subject, would probably have remained a dead letter, and the supreme tribunal of the state must have continued inoperative. In giving life and activity to this court, the acts passed by the legislature, pointing out the mode in which the judgments of inferior

courts may be revised and affirmed, or revised and annulled, <span>Eastern Dist.</span> and which in their operation do, sometimes, by the neglect of *December*, 1834. an appellant, preclude the Supreme Court from examining a cause on its merits, are certainly not contrary to the constitution.   The constitutional provision which gives the right of appeal, had reference alone to inferior courts, to be established for general purposes by the legislature; and if parties to a suit will choose their own judges, under the sole authority of law, they must be bound by the decision of such judges, in conformity with the provisions of law.

According to the best consideration we have been able to give to the case, we are of opinion, that the judgment of the District Court is correct.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.